Board of Education v. Campbell..

<table>
<tr><td>17</td><td>537</td></tr>
<tr><td>46</td><td>378</td></tr>
</table>

## BOARD OF EDUCATION v. A. G. CAMPBELL.

APPEAL, AND TRIAL ON MERITS; *Regularity of Appeal Presumed.* Where a right of appeal is given, and it appears that this right was attempted to be exercised, that the appellate tribunal took jurisdiction of the matter, that the parties interested appeared, and were heard before such tribunal, that no objection was made to its jurisdiction of the appeal, and that it decided the matter on such appeal, the regularity of the steps taken to perfect such appeal will, in any collateral inquiry, be presumed.

*Error from Morris District Court.*

ACTION by *Campbell* against *The Board of Education of the City of Council Grove,* to recover $130, balance alleged to be due him on a school order issued by the predecessor of said board of education. Trial at the April Term 1875, and judgment for plaintiff. The defendant brings the case here. The opinion contains a full statement of the facts..

*Sharp & Johnston,* for plaintiff in error.

*Bradley & Nicholson,* for defendant in error.

35—17 KAS.

The opinion of the court was delivered by

BREWER, J.: This was an action originally commenced by A. G. Campbell, defendant in error, to recover for wages claimed to be due him as a school teacher. The facts as developed on the trial, and as set out in the "case-made," are substantially as follows: In the year 1871 the territory now embraced by the plaintiff in error was composed of two school districts, known respectively as School District No. 1, of Morris county, and School District No. 2, of Morris county. Campbell was employed to teach a school in District No. 1, for three months, beginning April 15th 1871, for the sum of $65 per month. After he had taught the school two months, and on the 14th of July 1871, the superintendent of public instruction of Morris county formed a new school district out of said Districts No. 1 and 2, and other territory adjacent in the county, under the name of "Union School District No. 1, of Morris county." This new district immediately elected officers, took possession of all the property and franchises of old District No. 1, and hired new teachers, and exercised all the functions of a school board under the law. Afterward certain citizens of said School District No. 1, feeling aggrieved at the action of the county superintendent in forming said new school district, notified him that they would appeal from his decision creating said new school district to the board of county commissioners of Morris county; and they did so appeal, and the county board, on the 9th of September 1871, heard said appeal, and reversed the decision of the county superintendent, and placed said School Districts Nos. 1 and 2 in their former condition. The officers of said School District No. 1 still continued to act, and after the aforesaid proceedings were had before the board of county commissioners renewed their contract with Campbell, and by the terms of this contract, and by mutual consent, Campbell was hired to teach the school of said District No. 1 for three months, from September 9th 1871, to November 30th 1871, at $65 per month, and Campbell performed his

part of the contract. This made five months in all that
Campbell taught school for said District No. 1; and after-
ward said district, by its duly-authorized officers, executed
and delivered to Campbell as evidence of its indebtedness to
him for his said services two orders on its treasurer, one for
the sum of $130, being for the first two months' teaching,
and the other for the sum of $195, being for the last three
months' teaching. But the so-called Union School District
No. 1, upon its creation (by the act of the superintendent, as
before stated,) had possessed itself of the property and fran-
chises of School Districts Nos. 1 and 2, and after the afore-
said action of the county commissioners refused to surrender
to School District No. 1 its property and franchises; and said
so-called "Union School District" had collected the taxes
of School District No. 1 for the year 1871, so that School
District No. 1 was unable to pay Campbell the amount it
was indebted to him. In the winter of 1871, School District
No. 1 obtained a *mandamus* from the district court of Morris
county, commanding the said "Union School District" to
restore to School District No. 1 its property, effects and fran-
chises; but before said mandamus could be enforced, the
territory comprising said School District No. 1 and School
District No. 2, being the territory that had been organized
into said new school district as "Union School District No. 1,"
(all of said territory comprising the city of Council Grove, it
being then a city of the third class,) was by act of the legis-
lature (chapter 101, laws of 1872,) created into a city of the
*second class*, and said School District No. 1, and Union School
District No. 1, had no legal or corporate existence as such
districts so-called after that time, but all the territory com-
prising said districts was thereby merged into a new school-
district governed by the Board of Education of the city of
Council Grove, and said board of education became possessed
of all the property, effects, and franchises of said School Dis-
trict No. 1, and Union School District No. 1. Neither School
District No. 1, nor Union School District No. 1, ever paid
Campbell for his services, or any part thereof. He presented

the aforesaid school orders to the board of education of the city of Council Grove, and said board of education paid him (June 4th 1872,) the sum of $130 in full for said order issued for the two months he taught school in the spring of 1871, and $65 on the order issued to him for the three months' teaching in the fall of 1871. Said money was not paid to him as a settlement in full, and he brought suit for $130, the balance due on the last-mentioned order, and recovered a judgment for that balance.

The alleged errors complained of by plaintiff, are, 1st, that there was no legal appeal taken from the action of the county superintendent in forming Union School District No. 1; and 2d, that old District No. 1 was superseded, and never had power to make a valid contract after the action of July 14th, merging it into the Union District. The second proposition of counsel hinges on the first; for if the action of the commissioners was valid, then the action of the superintendent was vacated, and District No. 1 possessed all the powers to contract it ever had. Was there an appeal taken, such as the law contemplates? Section 51 of the Gen. Stat. 1868, page 926, provides that, "if in the formation or alteration of a school district, any person or persons shall feel aggrieved, such person or persons may appeal to the board of county commissioners, who shall confer with the county superintendent, and their action shall be final." This was the law in force at the time the contract sued on was made. There was no specified time fixed for the appeal, except that mentioned in this section. Counsel contends that, as no time for taking an appeal is fixed, it must be taken at or about the time of the superintendent's action, and that an appeal two months after such action is too late. We cannot assent to the conclusion he reaches. The record is silent as to how and when the appeal was taken. It recites that after the superintendent had taken his action, certain residents and citizens feeling aggrieved thereby notified him that they would appeal from such action to the county commissioners, and that afterward, and on the 9th of September, certain

*Appeal from county superintendent.*

proceedings were had before the commissioners, they conferring with the county superintendent, and that such proceedings resulted in setting aside the superintendent's order. In such proceedings before the commissioners, both the advocates and opponents of the superintendent's action appeared, and were heard by counsel. At what time the notice was given to the superintendent, at what time the papers in the appeal were filed with the clerk of the county board, does not appear. Neither does the record show whether there was any session of the commissioners between the 14th of July and the 19th of September. The law required no meeting between those dates. Gen. Stat. 256, § 13. But beyond all this, the district court of Morris county, a court of general jurisdiction, in an inquiry between the old and the new districts (by proceedings in mandamus,) sustained the corporate existence of the former, as well as its rights to the possession of the school buildings and other property. The court below, in the case at bar, made no special findings When regularity of fact, but only a general finding in favor of of appeal presumed. Campbell. Where the right of appeal is given, and the record shows that this right was attempted to be exercised, that the appellate tribunal took jurisdiction of the matter, that the parties interested appeared before such tribunal, that no objection was made to its jurisdiction of the appeal, and that the appellate tribunal decided the matter on such appeal, the regularity of the steps taken to perfect such appeal, will, in any collateral inquiry, be presumed.

The judgment will be affirmed.

All the Justices concurring.